UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

UNITED STATES OF AMERICA

**v.**

Docket No. 2:25-mj-00042-KEW

JUAN CLABIJO-TACURI

## SENTENCING MEMORANDUM

### BACKGROUND

Juan Pablo Clabijo-Tacuri was born in Canar, Ecuador.[1]  Juan was the second of five

brothers.  His family was very poor, and worked on a farm, cultivating corn.  The work was very

---

[1] *I was the second of five children.  I went to school until sixth grade, then to work on the family farm, cultivating corn.  It was very hard, working the land.  I was 15-16 when I came to the United States, paid for by my cousin.  My parents had a small home in Ecuador.  They were poor.  I lived with my cousin, now friends.  I was small couldn't find work, it was hard.  I did roofing, with my cousin, in New Jersey.*

*The first time I was deported in 2005, at the border.  I was able to arrive in New Jersey my second time I was deported.*

*The second time I was deported I was 21.  I was in New Jersey with my uncle, the police arrived.  I was in a car, a passenger.  They asked for everyone's id's.*

*I was in jail no more than five days, then 30 days in custody of ICE before deportation in 2011.  I returned in 2012, looking for work.  There was work in Ecuador but not enough to live on.  I was deported at the border.*

*I came back in 2013, where I was deported at Nogales, Arizona.*

*I stayed six years in Ecuador, where I met my wife.  We had three kids, all born in Ecuador, 13, 10, 8.  I work in construction in a farm.*

*In 2019, I came back to the United Stated to find work to support my family.  I was here for a year before bringing my family.  I had my four brothers in Massachusetts.*

*In 2020, I brought my wife and three kids to the United States.  I had a room in Massachusetts, where we all had to live.*

hard.  At age 11, in grade 6, he dropped out of school, to work the land.  The family couldn't afford to pay for a high school education.

At age 15, his cousin in New Jersey paid for "coyotes" to take him across the border to the United States.  He was immediately detained and summarily deported back to Ecuador.  He returned to the United States shortly thereafter.  This time, making it all the way to New Jersey, he learned roofing, living with his cousin and friends.  He was very small, and work was very challenging.  Still, he managed to stay in the United States, without incident, until the age of 21.

In 2011, he was a passenger is a vehicle stopped by police.  They asked for everyone's ID; he was detained by ICE.  He spent about a month in ICE custody, until he was deported again.

Again, he found the working conditions in Ecuador untenable.  He returned to the United States in 2012, looking for work.  He borrowed money from his uncle and brothers, all now living and working in Massachusetts.  He was again arrested at the border, detained by ICE, and deported to Ecuador.

He came back to the United States in 2013.  He was deported again from Nogales, Arizona, on the border with Mexico.

This time, he remained in Ecuador for a period of 6 years.  He met his wife, with whom he had three kids, now ages 13, 10, and 8.  He worked in construction and farming.  In 2019, in search

---

*I was working in roofing, for my brother, Segundo Clabijo. My wife worked too in a hotel, housekeeping in a hotel, to maintain the family, four to five days a week, six hours a day.*
*We were not able to find an apartment, just a room in n apartment for $1000 per month.  We all slept in the same room.*

*My wife got a work permit, and has applied for asylum.  I could not apply because I have prior deportations.*

*If I am deported, they are going to stay here.  Because it is too hard to earn a living in Ecuador.  I will live with my parents in Canar.  My mother is sick.  They still have the farm, but aren't able to work much.*

*I don't know when I am going to reunite with my family.  Only God knows.*

of work to support his growing family, he returned to the United States.  He worked for a year in the family roofing business in Massachusetts.  In 2020, his wife and kids arrived, seeking asylum.  His wife's pending asylum application entitled her to a legal work authorization.  She now works at a hotel in housekeeping, four to five days a week, six hours a day.

He was arrested on 1/27/2025, returning to Massachusetts after completing a roofing job in Maine.  He hasn't seen his wife or kids since then.  The family is now faced with the difficult decision of whether to abandon their asylum claim in the United States, abandon their children's schools and education, and return to Ecuador.

Meanwhile, upon his conviction and sentencing, he will be detained by ICE, and deported to Ecuador.

He has pled guilty to the charge of re-entry after removal.  He is awaiting sentencing on 5/14/2025.

**ARGUMENT**

The Defendant's total offense level is 8.  ¶ 21 of Presentence Report.  The government has moved for a downward departure of two levels, pursuant U.S.S.G. Sk3.1; in recognition of the Defendant's satisfaction of the eligibility requirement of the District of Maine's authorized early disposition program for certain Defendant's charged with having violated 8 U.S.C §1326.  See ECF #36.

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the following:

> (1)  To reflect the seriousness of the offense to promote respect for the law, and to provide just punishment for the offense.
>
> (2)  To afford adequate deterrence to criminal conduct.
>
> (3)  To protect the public from future crimes of the Defendant.

(4)  To provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(2)

Here, the Defendant's sentencing range is 0-6 months.  He has been incarcerated since 1/27/2025, a total of 3.5 months.

The nature and circumstances of the offense do not suggest a need to protect the public from the Defendant.  To the contrary, he has no criminal history in the United States other than his re-entry after removal.  He re-entered, not to commit crimes, but rather to work to support himself and his family.  He worked as a roofer, paid taxes, paid rent of $1,000 per month and lived in a small room in an apartment with his wife and kids.  For him, it was a small sacrifice to make, in order to offer his kids the education he himself was denied.

Now, his wife and kids are faced with the Hobson's choice of remaining in the United States, pursuing his wife's asylum application, and derivative asylum for his children, or returning to Ecuador.

Watching a group of prisoners being led to their execution, a 16th century English reformer named John Bradford uttered the memorable phrase "There but for the Grace of God go I".  The expression hearkens back to 1 Corinthians 15:10:

> But by the grace of God I am what I am, and his grace to me has not been ineffective.  Indeed I have toiled harder than all of them; not I, however but the Grace of God that is with me.

America serves as a beacon of prosperity to the world.  It is a country of immigrants.  Between 1880 and 1920, borders were relatively open.  Only 2% of immigrants were denied entry.  The rest were welcomed.  Ellis Island serves as a monument to the generation of immigrants that made prosperity available to succeeding generations.

This current generation is facing unique challenges in a world where poverty, violence, and climate migration all are driving desperate immigrants to desperate measures.  Juan Pablo Clabijo-

4

Tacuri's repeated re-entry is an example of those desperate measures. He wants only what he can earn by working harder than all of them. He is willing to share a single room with his wife and three kids, to afford the dream of an American education, and a better life for his children.

The public does not need to be protected from Juan Pablo. In fact, it will miss his contribution to our economy, and to our tax base. It will miss his low-cost labor, working to put a roof over our heads, as well as the heads of his wife and three children.

The immigration crisis will not be solved by imposing any additional jail time. Adequate deterrence is already effectuated by the cost of the family separation, a cost that will deprive his children of the father that made their own American dream possible.

## CONCLUSION

The Defendant should be sentenced to time served.

Dated: May 9, 2025                                     */s/ Robert A. Levine*

_____

Robert A. Levine, Esquire
Bar #3845
Attorney for Defendant
17 South Street
Portland, ME   04101
(207) 871-0036

CERTIFICATE OF SERVICE

I hereby certify that I have today filed the foregoing motion using the CM/ECF system,

which will cause a copy to be sent to all counsel of record

Dated:  May 9, 2025                                   */s/ Robert A. Levine*

_____

Robert A. Levine, Esquire
Bar #3845
Attorney for Defendant
17 South Street
Portland, ME   04101
(207) 871-0036